Upon review of the competent evidence of record, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. On 16 August 1996, the date of plaintiffs alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act.
2. On 16 August 1996, an employment relationship existed between plaintiff and defendant-employer.
3. American Insurance Company was the workers compensation insurance carrier on the risk on the date of plaintiffs alleged injury.
4. Plaintiffs Exhibits numbered 1 through 19, including 11A and 11B received from plaintiffs counsel on 3 August 1998, are admitted into evidence. Plaintiffs Exhibit numbered 5 is admitted into evidence for corroboration or impeachment purposes only.
5. Defendants Exhibits numbered 1 through 10 are admitted into evidence. Exhibits numbered 3 through 6 are admitted for corroboration or impeachment purposes only. Exhibits numbered 8 through 10 are admitted for illustrative purposes only.
***********
Based upon the credible evidence of record, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was thirty-seven years old and a high school graduate. Plaintiffs work experience included employment as an inspector for a textile manufacturer.
2. Plaintiff began employment with defendant-employer in January 1994. Defendant-employer operated a warehouse stocked with merchandise used to fill specific customer orders. Plaintiff worked in "pick-pack. The primary duty of plaintiffs position with defendant-employer was to select specific items of merchandise necessary to fill customer orders. In August 1996, plaintiff worked in the tie room.
3. In the tie room, defendant-employer stored boxes of mens ties on shelves. The shelves were arranged in rows. There were six shelves on each row. The merchandise on the top shelves could not be reached by a person of average height without using a stepladder or climbing onto the shelves. Plaintiffs height was average. The aisles between the rows were approximately thirty-six inches wide. Plaintiff was able to reach merchandise on the higher shelves by climbing onto the lower shelves. Plaintiff climbed the shelves by straddling the aisle, with one foot on a shelf on one side of the aisle and her other foot on a shelf on the opposite side of the aisle.
4. Plaintiff and other employees who worked in the tie room regularly climbed the shelves in this manner to obtain ties from the upper shelves to fill customer orders.
5. On 15 August 1997, plaintiff was filling an order that required her to obtain ties from a box on one of the upper shelves. Plaintiff climbed the shelves in her usual manner until she was straddling the aisle at the height of the third shelf. Plaintiff placed one of her feet on a box on the third shelf. The box tore and gave way beneath plaintiffs foot, causing her to lose balance. Plaintiff nearly fell but was able to keep from falling by holding onto a shelf with both hands. However, as a result of this incident, plaintiffs knees bent inward and struck one another and her body twisted as she clung to the shelf. Plaintiff was able to lower herself to the floor without falling.
6. As a result of this incident, plaintiff experienced pain in her right knee and her lower back. Nevertheless, plaintiff continued to work and did not report this incident to defendant-employer until the following day when she reported the incident to her supervisor, Mr.Barnes. At that time, plaintiff had a low back ache and an Ace bandage was wrapped around her knee.
7. Plaintiff continued to work through 30 August 1996. However, by that date, her low back symptoms had worsened and she was beginning to experience pain in her right lower extremity. On Saturday, 31 August 1996, plaintiff presented to the office of her family physician where she was examined by Alexis Ann Buzuma, D.O., to whom she reported the incident on 15 August 1996. Dr. Buzuma administered an injection of steroidal anti-inflammatory medication and prescribed oral medications for pain and inflammation. On 3 September 1996, plaintiff returned to Dr. Buzuma with no improvement in her symptoms. Dr. Buzuma referred plaintiff to an orthopedic surgeon, Dr. Ritchie.
8. On 6 September 1996, plaintiff again reported to defendant-employer that she was injured during the incident on 15 August 1996.
9. On 13 September 1996, plaintiff presented to Dr. Ritchie and described the incident which occurred on 15 August 1996. Dr. Ritchie excused plaintiff from work and prescribed medications and physical therapy. Dr. Ritchie continued to care for plaintiff until 13 November 1996, when she came under the care of Harlan B. Daubert, M.D. Dr. Daubert continued plaintiffs work excuse until 16 January 1997. At this time, Dr. Daubert released plaintiff to return to work with restrictions against repetitive lifting, twisting, and bending and lifting more than twenty pounds.
10. Plaintiff returned to work for defendant-employer on 3 February 1997. Plaintiff continued to work, within the restrictions imposed by Dr. Daubert, until 2 May 1997. By that date, plaintiff began treatment with Steven Allen Grubb, M.D., upon referral from her sister. In May 1997, Dr. Grubb recommended certain diagnostic studies to determine the cause of plaintiffs symptoms. Plaintiffs inability to pay for these studies caused the studies to be delayed until 24 October 1997. On that date, Dr. Grubb performed a discogram and CT scan. These studies revealed that plaintiff had a central posterior tear at L4-L5 and postlateral peripheralization at L5-S1. To treat plaintiffs conditions, Dr. Grubb performed a L4 to sacrum decompression, stabilization, and fusion on plaintiff on 20 November 1997.
11. As of 28 August 1998, plaintiff had not reached the end of her healing period. Dr. Grubb anticipated that she would reach maximum medical improvement within six months of that date.
12. As a result of the incident on 15 August 1996, plaintiff sustained a traumatic disc injury or significantly aggravated a pre-existing lumbar degenerative disc disease. The injury plaintiff sustained as a result of that incident rendered her incapable of earning wages from defendant-employer or any other employer from 31 August 1996 through 2 February 1997 and after 3 May 1997.
13. Plaintiff provided defendant-employer with actual notice of her injury within thirty days of its occurrence. Plaintiffs failure to give written notice within that time was reasonable, did not prejudice defendants, and is excused.
14. During the fifty-two weeks prior to 15 August 1996, plaintiff earned wages totaling $20,683.69. Therefore, plaintiffs average weekly wage should be calculated by dividing $20,683.69 by 365 to determine her average daily wage. Multiplying plaintiffs average daily wage by 7 produces an average weekly wage for plaintiff of $396.67.
15. During the period that plaintiff has been unable to earn wages, defendant-employer has paid plaintiff disability benefits at the rate of $972.92 per month for an undetermined number of months. These payments were paid from a disability benefit plan funded solely by defendant-employer. However, due to the plans reimbursement provisions, defendants conceded at the hearing before the Full Commission that they are not entitled to a credit for payments made under the plan.
***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On 15 August 1996, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer. G.S. 97-2(6).
2. As a result of her injury, plaintiff is entitled to payment of total disability compensation at the rate of $264.46 per week from 31 August 1996 through 2 February 1997 and continuing from 3 May 1997 until order of the Industrial Commission allowing defendants to cease payment of total disability compensation. G.S. 97-29.
4. Plaintiff is entitled to payment of all medical expenses incurred as a result of her injury on 15 August 1996. G.S.97-25.1.
***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff total disability compensation at the rate of $264.46 per week from 31 August 1996 through 2 February 1997 and continuing from 3 May 1997 until order of the Industrial Commission allowing cessation of total disability compensation. The amount that has accrued shall be paid in a lump sum, subject to the attorneys fee approved in paragraph 3 of this Award.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her injury on 15 August 1996.
3. A reasonable attorneys fee of twenty-five percent of the compensation due plaintiff is approved for plaintiffs attorney and shall be paid as follows: twenty-five percent of the accrued amount due plaintiff shall be deducted and paid directly to plaintiffs attorney. Thereafter, plaintiffs attorney shall receive every fourth check.
4. Defendants shall pay the costs.
 S/_______________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/_____________ THOMAS J. BOLCH COMMISSIONER